*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0329P (6th Cir.)
File Name: 02a0329p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*

DAVID DEVON DAVIS,
　　　　*Defendant-Appellant.*

No. 00-1270

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00095—Gordon J. Quist, District Judge.

Argued: June 20, 2002

Decided and Filed: September 25, 2002

Before: CLAY and GILMAN, Circuit Judges; HAYNES,
District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Kevin M. Schad, SCHAD & COOK, Indian
Springs, Ohio, for Appellant. Andrew B. Birge, ASSISTANT
UNITED STATES ATTORNEY, Grand Rapids, Michigan,

———————————
[*]The Honorable William J. Haynes, Jr., United States District Judge
for the Middle District of Tennessee, sitting by designation.

1

for Appellee.  **ON BRIEF:**  Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant.  Andrew B. Birge, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.  David Devon Davis, Terre Haute, Indiana, pro se.

————————

## OPINION

————————

CLAY, Circuit Judge.  Defendant, David Devon Davis, appeals from the judgment of conviction and sentence entered by the district court following Defendant's jury trial convictions for aiding and abetting in the commission of two armed bank robberies, in violation of 18 U.S.C. § 2113(a) and (d), and of aiding and abetting in the using or carrying and brandishing of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Defendant, through counsel, raises seven challenges to his sentence.  Proceeding *pro se*, Defendant raises another three independent challenges.  The challenges Defendant raises in this appeal go to the entire proceedings below, from alleged deficiencies in his indictment to sentencing errors.  For the reasons that follow, we **AFFIRM** Defendant's convictions, but **VACATE AND REMAND** his sentence with respect to his restitution order.  In all other respects, we **AFFIRM** Defendant's sentence.

## BACKGROUND

### Procedural History

On June 28, 1999, a federal grand jury in Grand Rapids, Michigan returned a four-count indictment against Defendant, alleging two counts of aiding and abetting in two bank robberies, in violation of 18 U.S.C. § 2113 (a) and (d), and 18 U.S.C. § 2, and two counts of aiding and abetting in the use and brandishing of a firearm during the robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  On September 16, 1999, the grand jury returned a superseding indictment alleging the

no indication that the factors outlined under 18 U.S.C. § 3664(f)(2)(A)-(C) were considered in setting the payment schedule. For these reasons, we believe that the case should be remanded so that the district court, pursuant to the express terms of the MVRA, can set a payment schedule. *See Meyers*, 198 F.3d at 169 (holding that it was plain error for district court to order restitution in one lump sum without issuing a schedule of payments); *Coates*, 178 F.3d at 685 (same).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's convictions, but **VACATE AND REMAND** his sentence with respect to his restitution order. In all other respects, Defendant's sentence is **AFFIRMED**.

same crimes, but with technical modifications to the indictment. Defendant was arraigned on the original indictment on July 19, 1999, and on the superseding indictment on September 21, 1999. Both times, Defendant pleaded not guilty to all charges. A three-day jury trial commenced on September 23, 1999, and after deliberations, the jury returned a verdict of guilty as to all counts. Defendant was sentenced to a term of 481 months' imprisonment, a $400 special assessment ($100 for each count), $4,790 in restitution, and five years of supervised release. Defendant filed this timely appeal on March 2, 2000.

## Facts[1]

### 1. Arraignment and Advisement of Possible Sentencing Range

At Defendant's first arraignment, a federal magistrate judge informed Defendant, and his then counsel Larry B. Woods, of the four charges against Defendant. The magistrate specifically informed Defendant that if he was convicted on count four of his indictment for aiding and abetting the use of a firearm during a crime of violence, he faced twenty-five years' imprisonment. At Defendant's second arraignment pertaining to the charges in the superseding indictment, the magistrate informed Defendant and his counsel, John R. Beason, of the same four charges, but advised Defendant that as to counts two and four, he faced a possible sentence of only seven years for each offense. Defendant represented that he understood the charges against him and the possible sentences he faced and pleaded not guilty both times. Defense counsel failed at any time to inform Defendant that he faced a twenty-five-year sentence if he was convicted of count four of the indictment.

---

[1]The Facts are divided into discrete sections, and relate only to the specific portions of the proceedings below that Defendant challenges.

## 2.    Proof at Trial

At Defendant's trial, fourteen-year-old Jordell Steen testified that he robbed two banks on February 9, 1999 and was aided by Defendant, who was twenty-two years old at the time of the offense, and Antwand Hawkins. Steen testified that before Defendant arrived at Hawkins' house, Steen and Hawkins had talked about making some money, but made no mention of a bank robbery. Hawkins called Defendant, who when he arrived, asked Steen whether he (Steen) "was going to do that?" Steen testified that this referred to committing a bank robbery. Steen testified that Defendant told him he had better rob the bank. According to Steen, Defendant planned many of the details of the robbery and provided the firearms to be used.

Hawkins and Steen's account of what transpired varied somewhat. Hawkins testified that Steen needed to get out of town because the police were looking for him, and he wanted to rob a bank but did not know how to drive. Hawkins called Defendant and told him that Steen wanted to rob a bank but needed guns and a ride.

Steen testified that Hawkins and Defendant originally wanted him to rob a bank on "28th Street," but that because Steen had robbed that bank earlier, they thought it would be "too hot" to return there. Steen testified that Defendant then selected a bank on 3000 Eastern Avenue in Grand Rapids. Steen testified that Defendant lived in that area and said he was familiar with the bank  Hawkins verified this account, testifying that Defendant told Steen that they would rob a bank that's "smoother."

Steen testified that before they arrived at the bank, Defendant gave him a gun and told him that it was already cocked and loaded. Steen testified that Defendant told him to go into the bank and ask for hundreds, fifties, and twenties, and that if anyone put dye in the bag with the cash, that he was to shoot that person. However, Hawkins testified that Defendant gave Steen one of the guns at his home, and told him not to shoot anyone.

recognized the distinction between the two statutes in *Coates*. *See* 178 F.3d at 685 ("Unlike the MVRA, the VWPA provides the district courts with discretionary authority to schedule restitution payments."). In *Coates*, under plain error review, the Third Circuit based its decision to remand to the district court the restitution order in that case not only because of an improper delegation of the district court's duties to the probation office, but also because the district court failed to satisfy the MVRA's mandatory requirements under § 3664 that the district court alone "shall" set payment schedules. *Coates*, 178 F.3d at 685. We find the analysis in *Coates* persuasive, and believe that the district court in the instant case erred in failing to set Defendant's restitution payment schedule.

Our holding, however, does not preclude the district court from eliciting the assistance of others in setting such a schedule. Indeed, in an unpublished decision we approved of such an approach in setting a restitution payment schedule. *See United States v. Ayantayo*, No. 99-2321, 2001 WL 1176331 (6th Cir. Sept. 27, 2001) (unpublished). In *Ayantayo* we rejected a defendant's argument that under the MVRA the district court "impermissibly delegate[d] specification of the payment schedule to the probation officer," where the record showed that the court instead "merely sought a recommendation [but] retained final approval over the schedule." *Id*. at **2.

As the record currently stands, the terms of Defendant's payment schedule are unclear. He contends that a payment schedule was set by the Bureau of Prisons. However, there is

---

according to which, the restitution is to be paid, in consideration of--
(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
(B) projected earnings and other income of the defendant; and
(C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2)(A)-(C).

delegate its authority to the BOP to create a payment schedule, such delegation was in compliance with authority from this circuit. *See Weinberger v. United States*, 268 F.3d 346 (6th Cir. 2001).

In *Weinberger*, this Court rejected the position taken by some circuits that "held that the determination of the rate and terms of restitution (including determination of the amount, time, and schedule of installment payments) is a core judicial function that may not be delegated to probation officers." *Id*. at 359 n.3. *Weinberger*, however, dealt with the MVRA's predecessor statute, the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663. *Weinberger*, 268 F.3d at 355. The Court held that the district court did not abuse its discretion in delegating the scheduling of the defendant's restitution payments while he was in prison through the Inmate Financial Responsibility Program ("IFRP"), which "allows for the development of a financial plan that allows inmates to pay enumerated obligations, such as restitution payments while incarcerated." *Id*. at 360-61; *see also Monano-Figueroa v. Crabtree*, 162 F.3d 548 (9th Cir. 1998) (same). We have yet to determine in a published opinion a district court's duties under the MVRA with regard to setting restitution payment schedules.

The MVRA applies to sentencing proceedings in cases, such as the present, where "the defendant was convicted on or after April 24, 1996." *United States v. Coates*, 178 F.3d 681, 683 (3d Cir. 1999) (citation omitted). Unlike the VWPA, the MVRA expressly states that "the court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," and in doing so shall consider the factors delineated in the provision. 18 U.S.C. § 3664(f)(B)(2) (2000).[6]   The Third Circuit

---

[6]The statute reads in pertinent part:

(2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule

---

Steen testified that Hawkins dropped him off in front of the bank and, pursuant to the plan, Steen went inside with a .38 firearm and demanded money. He testified that a man put money and, unbeknownst to Steen, dye, in a burgundy bag that Hawkins had given to Steen. After Steen got the bag, he ran to the side of bank where, according to the plan, he was to find clothes that Hawkins left for him. The dye in the bag exploded and Steen stated that it got on his hands. Steen left the money by a fence, which he testified Hawkins and Defendant told him to do, and changed into the clothes that were left there for him. He eventually left the gun on a nearby bridge. Steen testified that Defendant told Steen after he robbed the bank, changed clothes, and dropped the money off, he was either supposed to take a city bus back to Hawkins' house, or Hawkins and Defendant would pick him up.

After the first robbery was completed, Defendant and Hawkins picked up Steen in Defendant's car. Defendant and Hawkins went to look for the money but could not find it. Hawkins and Defendant took Steen to the house of one of Defendant's relatives so that Steen could wash the dye off his hands.

Defendant then decided that Steen should rob another bank. According to Steen, Defendant told him that Defendant had not "come down here for nothing." They drove to Old Kent Bank in Grand Rapids, and Defendant gave Steen the second gun, and told him to rob that bank. Steen testified that Defendant told him to demand hundreds, fifties and twenties, and also to tell the teller "to fill the money up" so that Steen could see if the teller were to put dye in the bag. After the robbery, Steen ran from the bank and jumped into Hawkins' car. Defendant followed in his car. Once back at Hawkins' home, which was also the home of his girlfriend, Defendant and Hawkins split the money and Steen returned Defendant's gun to him. Steen testified, however, that he stole fifty dollars of the money when Hawkins' back was turned.

Steen testified that after the robbery, Defendant told Steen that he was sending him to stay with some friends in

Cleveland. He provided Steen money for a bus trip to Cleveland and with the name and number of the friend with whom Steen was to stay. After arriving in Cleveland, Steen realized the contact information was false. Steen slept in the bus terminal, garages and on the streets for a few days until he was aided by a woman, Mahogany Austin, who found him on the street one night and with whom he stayed for a month. Steen contacted Defendant from Cleveland, and testified that Defendant told him to go to New York and that there were friends there with whom Steen could reside. Steen received money from Austin's sister and stayed with Defendant's friends, who told Steen that in order to remain with them he would have to sell drugs. Steen testified that he overheard one of Defendant's friends speaking with Defendant on the phone, and that Defendant gave his friend orders to kill Steen. Steen testified that he managed to escape after a lengthy street chase.

### 3.    Juror taint

At the end of the second day of the three-day trial, a juror, Karen Stephen, notified a member of the judge's staff that she worked with the mother of a government witness who had just testified. The district court advised the parties of this fact, and defense counsel suggested making Stephen an alternate. The following day, the district court again addressed the issue, and the prosecution reiterated the defense counsel's earlier suggestion. The district court stated that another possibility would be "to get Ms. Stephen in here," presumably for questioning. However, both parties agreed to allow all jurors, including Stephen, to remain on the jury, but to dismiss Stephen as an alternative at the end of the trial.

### 4.    Government's delay in disclosing witnesses and witness statements

On the second day of trial, the prosecutor informed the district court that he had discovered two new witnesses, Heidi Austin and Joan Harry, that he might call to take the stand. The prosecutor told the court that he had only the day before discovered that Austin knew anything about the case. As for

to tampering with consumer products." *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000); *see also* 18 U.S.C. § 3664(f)(1)(B) (explaining that court shall order restitution in full without consideration of defendant's financial circumstances). Therefore, despite Defendant's arguments to the contrary, in imposing restitution, the district court was precluded from considering Defendant's indigence or obligations to his children.

Defendant also contends, however, that the district court erred in failing to set up a payment plan. Pursuant to the MVRA,

> Upon determination of the amount of restitution owed to each victim, *the court shall*, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(1)(B)(2)(A)-(C) (emphasis added).

A restitution order may provide that the defendant pay the amount owed in one lump sum, in period payments or, if economic circumstances dictate, in nominal periodic payments until the restitution amount is paid in full. § 3664(f)(3)(A) and (B).

Defendant contends that the district court allowed the BOP to set a payment plan without considering his financial obligations to his dependents or the amount of money he actually earns from his prison job, which he claims in his brief is $15 a month. The government counters that pursuant to 18 U.S.C. § 3792(d), the payment of any restitution must be immediate unless the sentencing court determines that the interest of justice requires otherwise. The government also contends that assuming that the district court did implicitly

### J.   Whether the district court plainly erred when it ordered that restitution be paid in full without establishing a schedule of payments

Defendant contends that the district court erred when it ordered restitution to be paid in full immediately, despite the PSIR's finding that he was indigent.[5]  Defendant claims that the court also failed to consider Defendant's other financial obligations, such as his obligations to his children, in imposing the restitution order.  Defendant further complains that the district court failed to set forth a schedule of payments, but allowed the Bureau of Prisons ("BOP") to do so instead, and thus his sentence is illegal and must be vacated.

The district court ordered Defendant to pay restitution in the amount of $4,790, but waived a fine because of Defendant's inability to pay.  The district court sentenced Defendant under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A-3664.  Under the MVRA, "restitution is mandatory–regardless of a defendant's financial situation–when a defendant is convicted of a crime of violence, an offense against property, or an offense related

---

actually directing anyone's actions. *Id.* at 1091-92. The Court noted that not a single witness testified that the defendant had ever directed anyone to do anything. *Id.* By contrast, as we have explained, Steen testified that Defendant did in fact direct him to rob the bank and planned many of the details to carry out the scheme. Therefore, *Walker* is distinguishable.

[5] As for Defendant's financial condition, his PSIR stated:

According to a Personal Financial Statement, Probation From 48A, completed by Mr. Davis, he has no bank accounts, securities, real estate, life insurance, motor vehicles, or other assets. He denied having any charge accounts, lines of credit, or other liabilities. Based on his overall financial situation, it does not appear Mr. Davis possesses the financial means to pay a fine. It is recommended any potential prison earnings be utilized to pay restitution and the arrearage on child support.

(J.A. at 330, ¶ 83.)

---

Harry, the prosecutor stated that he did not know that she had been subpoenaed until the day before.  Defense counsel objected to the late naming of the new witnesses.  He contended that the government had known about Austin for months and had not put her on the witness list.  The district court overruled the objection, explaining that it knew of no federal criminal procedure rules that required the government to name their witnesses beforehand.  Ultimately, only Harry testified on the third day of trial.  Her testimony consisted of admitting that she did not know Defendant personally but knew that he used to visit her step-daughter.

On the third day of trial, the prosecutor informed the district court that he had forgotten to turn over to defense counsel audio tapes of phone calls that Hawkins made while in jail. Defense counsel told the district court that he had not had an opportunity to review those tapes and did not know whether they contained exculpatory or inculpatory information.  The prosecutor told the court that there were approximately six to eight conversations on those tapes and admitted that he should have turned them over to the defense.  The prosecutor proposed that at the end of the day, he would give defense counsel the tapes to review and that defense counsel should then be allowed to recall Hawkins and another witness, who also was on the tape, if he deemed it necessary.  Defense counsel stated that he believed that was a satisfactory solution provided he was given enough time to listen to the tapes.

Defendant, however, informed his attorney that he did not want the trial to be postponed another day, and wanted the trial resolved that day.  Defense counsel told the court that he believed the tapes might have some value.  He stated that he had listened to one tape and believed that it might have some favorable information, but he did not know what was on the rest of the tapes.  The court then asked Defendant whether he understood that there may be information on the tapes that would be helpful to his case, and that no one, including the government, had any idea what was on the tapes because no one had listened to them all.  The following colloquy then occurred:

The Court:    And I'm going to give your lawyer full opportunity to listen to those tapes, and the delay we're talking about is not long.   It's only till tomorrow morning at nine o'clock.  I mean, then we'll continue.  But that will at least give Mr. Beason [defense counsel] an opportunity to listen to those tapes. Do you understand that?

The Defendant:    Yes, Your Honor.

The Court:    In addition to that, it's my judgment that by the time we get done with the last witness and the instructions and the closing arguments, the day is going to be just about done anyway, so maybe the jury will have to come back tomorrow anyway.  They didn't seem to be very upset when I told them they'd probably have to come back tomorrow.

The Defendant:    Yes, Your Honor.

The Court:    I will give them an instruction, if you request it, that any delay in this case–in fact, I'll say that neither lawyer delayed the case; although I'll put it this way.  Mr. Beason certainly has done nothing to delay the case and has a done a fine job representing you, so that there will be no bad inference toward you at all, sir.   Do you understand that?

The Defendant:    Yes, Your Honor.

The Court:    If I were you, quite frankly, I would want my lawyer to listen to the tapes. Do you understand that?

courts generally do not review the district court's determinations regarding witness credibility." *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1991) (citation omitted). In any event, Steen's trial testimony, which was subject to cross-examination, is sufficient to affirm the district court's findings as to the role Defendant played in the bank robberies. *See United States v. Chalkias*, 971 F.2d 1206, 1215-16 (6th Cir. 1992).

As the district court pointed out, Steen testified that Defendant told him to rob the bank.  Steen also testified that Defendant provided him the weapons and planned many of the details for the robberies.  For instance, Steen testified that Defendant selected the banks to be robbed, advised him as to the types of bills to request, and told him to shoot anyone who put dye in the bag.  Steen also testified that Defendant told him the escape route to take after he left the first bank.  Steen further testified that Hawkins and Defendant transported him to the banks and left him there to rob them.  Moreover, Steen testified that Hawkins and Defendant kept all of the money from the robberies, except for $50.00 that Steen stole from Hawkins when the latter's back was turned.   Steen also testified that it was Defendant who told him to go to Cleveland and New York after Steen committed the robberies. Based on the foregoing, the record supports finding that Defendant controlled Steen's actions, planned and organized the details of the robberies, kept a large share of the fruits of the crime, and exercised decision-making authority with regard to the offenses. *Maliszewski*, 161 F.3d at 1017; USSG § 3B1.1, comment. (n.4.) Accordingly, Defendant's arguments that his sentence should not have been enhanced based on the role he played in the bank robberies are without merit.[4]

[4] Defendant's reliance on *United States v. Walker*, 160 F.3d 1078 (6th Cir. 1998) to support his argument is misplaced.  In *Walker*, this Court held that the district court clearly erred in finding that the defendant was a leader, organizer, manager, or supervisor in a drug distribution conspiracy inasmuch as no witness at trial or at sentencing discussed the defendant organizing the administrative details of the conspiracy or

and find no error in the adjustment to Defendant's sentence for the role he played in the offenses.

"A district court's determination regarding a defendant's role in the offense is reversible only if clearly erroneous." *United States v. Washington*, 127 F.3d 510, 515 (6th Cir. 1997) (citation omitted). In reviewing this determination, we give due deference to the district court's application of the facts to the Sentencing Guidelines. *Id*. "The prosecution must prove a defendant's status (as an organizer, leader, manager or supervisor) by a preponderance of the evidence." *United States v. Gonzales*, 929 F.2d 213, 216 (6th Cir 1991) (citations omitted).

Section § 3B1.1(c) of the Sentencing Guidelines provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." USSG § 3B1.1(c). For purposes of the instant case, in order "[t]o qualify for the adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997) (citing USSG § 3B1.1, comment. (n.2)). The Sentencing Guidelines also provide factors that the district court should consider in determining whether the adjustment is proper, which entail: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. USSG § 3B1.1, comment. (n.4.); *see also United States v. Maliszewski*, 161 F.3d 992, 1017 (6th Cir. 1998). More than one person can be a leader or organizer of a criminal association. *Maliszewski*, 161 F.3d at 1017.

In imposing the two-level enhancement under USSG § 3B1.1, the district court relied primarily on Steen's trial testimony, which the court found credible. "The appellate

The Defendant:   Yes, Your Honor.

(J.A. at 285-86.)

After Defendant again consulted with his attorney, defense counsel informed the court that Defendant was still "adamant" about wanting to conclude the trial. The prosecutor then stated that he had spoken with a Grand Rapids police officer, and could at that point summarize what was on the tapes, but the district court would not allow him to do so because the court did not want the record to reflect that anyone was relying on what the prosecutor might have said.

#### 5.    Defendant's role in the offense

At sentencing, Defendant claimed that he was innocent and played no role in any of the crimes for which he was convicted. Defendant also claimed that he advised his attorney to object to four different items contained in his presentence investigation report ("PSIR"). However, his attorney objected to only one issue. Defendant then advised the court that he objected to his role in the offense as an organizer in the offense. The district court then stated:

All right. I would find–if the objection is made, and I'll take the objection now–that you should be enhanced for the two points on both paragraphs 46 and 47 in that, based on the testimony of Mr. Steen, you and Mr. Hawkins got Mr. Steen involved in this. I know that there is a statement from Mr. Hawkins that Steen suggested it; but, nonetheless, you two people, based on the testimony which I believe got him to the bank, gave him the gun, and then left in the car before he got back to you with the dye pack and the money. . . . He was a young boy at that time, although-albeit, not inexperienced in bank robberies, obviously.

(J.A. at 302-03.)

## DISCUSSION

Defendant, either *pro se*, or through counsel, raises the following challenges to his conviction and/or sentence: (1) whether the evidence was sufficient to support his conviction for aiding and abetting in the bank robberies and using or carrying a firearm during those crimes; (2) whether the indictment was defective for failing to include all of the essential elements of the crimes charged; (3) whether the district court should have given a specific jury instruction that required the jury to unanimously agree on the specific affirmative acts Defendant performed in committing his aiding and abetting offenses; (4) whether counts two and four of Defendant's indictment must be dismissed because they are duplicitous; (5) whether Defendant's convictions violated the Double Jeopardy Clause or were otherwise multiplicitous; (6) whether the district court should have held a hearing or taken some other action upon discovering during trial that a juror knew the mother of a government witness; (7) whether the government engaged in misconduct by failing to disclose two witnesses pre-trial and failing to turn over possible exculpatory evidence to the defense, such that his convictions must now be vacated; (8) whether trial counsel rendered ineffective assistance of counsel by, among other things, failing to advise defendant that he faced a mandatory twenty-five-year sentence for conviction under count four of his indictment; (9) whether the district court clearly erred in increasing defendant's offense level by two points, pursuant to USSG § 3B1.1, based on the court's findings regarding his role in the offenses; and (10) whether the district court plainly erred when it ordered that restitution be paid in full without establishing a schedule of payments. We will address each of these arguments in turn.

jury instructions; (6) failing to review tape records of Hawkins; and (7) failing to move for a mistrial as a result of *Brady* violations.

This Court generally will not review ineffective assistance of counsel claims on direct appeal because the record is insufficiently developed to assess the merits of such claims. *See United States. v. Brown*, 276 F.3d 211, 217 (6th Cir. 2002); *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997). "This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, . . . and appellate courts are not equipped to resolve factual issues. As a result, our court has routinely concluded that such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *Id*. In addition, "[t]he trial process contains a myriad of complex decisions that, for strategic reasons, are sound when made, but may appear unsound with the benefit of hindsight. The defendant, thus, must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Fortson*, 194 F.3d at 736 (citation and internal quotation marks omitted).

### I. Whether the district court clearly erred in increasing Defendant's offense level by two points, pursuant to USSG § 3B1.1, based on the court's findings regarding his role in the offenses

Defendant contends that the district court improperly enhanced his sentenced as an organizer, leader, manager or supervisor in the bank robberies, pursuant to USSG § 3B1.1(c). He contends that the evidence that Defendant actually controlled another person was contradictory. He points out that Steen was experienced in bank robberies, and that Hawkins testified that it was Steen who raised the idea of robbing the banks and who recruited Hawkins and Defendant to assist him. Defendant argues that the district court was swayed by the fact that Steen was only fourteen years old at the time of the offenses. We reject Defendant's arguments

testified, the jury instructions were given, and the closing arguments were given, the day would be nearly over in any event. Still, Defendant failed to heed the advice of the court or his attorney, and refused to allow the case to be postponed so that his attorney could review the tapes. We find no error under these circumstances. *Ross*, 245 F.3d at 584; *Pope*, 574 F.2d at 325-27.

**H.    Whether trial counsel rendered ineffective assistance of counsel by, among other things, failing to advise defendant that he faced a mandatory twenty-five-year sentence for conviction under count four of his indictment**

Ineffective assistance of counsel claims involve mixed questions of law and fact that this Court reviews *de novo*. *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999). Claims of ineffective assistance of counsel are reviewed under a two-pronged test, in which Defendant must establish (1) that his lawyer's performance was deficient compared to an objective standard of reasonable performance, and (2) that there is a reasonable probability that his lawyer's errors prejudiced the outcome of the proceedings against him. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Arredondo*, 178 F.3d at 782.

Defendant claims, through counsel and *pro se*, that his trial counsel rendered ineffective assistance by (1) failing to inform Defendant that if he proceeded to trial, he faced a mandatory twenty-five-year additional term of imprisonment for a successive conviction under 18 U.S.C. § 924(c) (count four of the indictment); (2) failing to challenge the adequacy of the indictment or prepare a defense; (3) failing to file any motions to suppress evidence, and failing to object to the admittance of prejudicial evidence; (4) failing to call key witnesses or adequately impeach key government witnesses; (5) failing to object to adverse rulings or object to improper

**A.    Whether the evidence was sufficient to sustain his convictions for aiding and abetting in the bank robberies and using or carrying a firearm during that crime**

Defendant contends that the evidence was insufficient to sustain his conviction inasmuch as there was no physical evidence tying him to the offenses charged, and the jury should not have believed any of Steen's testimony because it was inconsistent on several points and "highly questionable" in general. We disagree, and hold that there was sufficient evidence to find Defendant guilty beyond a reasonable doubt of all of the crimes for which he was charged.

"When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. Gibbs*, 174 F.3d 762, 774 (6th Cir. 1999) (citations omitted). "Circumstantial evidence alone may sustain a conviction under this deferential standard of review." *United States v. Adams*, 265 F.3d 420, 423 (6th Cir. 2001) (citations omitted).

In order to prove a violation of 18 U.S.C. § 2113(a) and (d), the government must show: (1) that by force or threat of force; (2) the defendant attempted to take from a person in another's presence an item of value; (3) that is in the custody or control of a bank; and (4) in doing so, placed in jeopardy the life of any person by use of a dangerous weapon or device. *United States v. Waldon*, 206 F.3d 597, 605 (6th Cir. 2000) (citing 18 U.S.C. § 2113(a)); *see also* 18 U.S.C. § 2113(d). In order to prove a violation of 18 U.S.C. § 924(c)(1)(A)(ii), the government had to show that during or in relation to a crime of violence, Defendant used or carried and brandished a firearm. *Id*. Defendant was charged and convicted for aiding and abetting in the commission of these crimes. To be convicted as an aider and abettor, the government had to prove that Defendant "offered assistance or encouragement to

his principal in the commission of a substantive offense." *United States v. Webber*, 208 F.3d 545, 553 (6th Cir. 2000) (quoting *United States v. Ledezma*, 26 F.3d 636, 642 (6th Cir. 1994)). An aider and abettor may be punished as a principal. *United States v. Maselli*, 534 F.2d 1197, 1200 (6th Cir. 1976) (explaining that "one who causes another to commit an unlawful act is as guilty of the substantive offense as the one who actually commits the act"). This Court has also explained aiding and abetting in the following manner:

> Aiding and abetting requires that a defendant "in some sort associate himself with the venture, that he participates in it as something he wishes to bring about, and that he seek by his action to make it succeed." Thus, it has been said that aiding and abetting involves (1) an act by a defendant which contributes to the execution of a crime; and (2) the intent to aid in its commission.

*United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995) (citations and internal quotation marks omitted).

Steen testified that Defendant assisted him in robbing the banks and using firearms to do so by providing transportation, supplying the guns, picking out the banks to be robbed, and ushering Steen to a relative's house to wash dye off of his hand after the dye exploded on Steen after the first robbery. Steen also testified that Defendant told him to rob the banks, to request specific types of denominations while doing so, and to shoot anyone who put dye in the money bag. Many of the details of the robberies were corroborated by Hawkins, including that Defendant decided which banks to rob and provided Steen the firearms to commit the robberies. Construing the evidence in the light most favorable to the prosecution, the evidence was more than sufficient for the jury to find that Defendant contributed to the execution of both bank robberies and the firearm offenses, and that Defendant intended to aid in the commission of those crimes. *Lowery*, 60 F.3d at 1202.

Defendant contends that there was no physical evidence linking him to the banks. He argues that the proof showed

at 560 (explaining that *Brady* requires the government to turn over any information that is both favorable to defendant and that pertains to the issue of guilt or innocence). However, the district court offered Defendant every opportunity to review the tapes. Further, the government recommended and defense counsel agreed that after defense counsel reviewed the tapes, he should be allowed to recall Hawkins if necessary for further cross- examination. Against the advice of the district court and his own counsel, Defendant refused to postpone his trial for one more day in order to allow his counsel to review the tapes. Under these circumstances, Defendant has failed to show that he was prejudiced by any violation of *Brady* or the Jenks Act. *See Patrick*, 965 F.2d at 1400 ("There is no prejudice from a tardy Jencks disclosure if the court gives the defendant the opportunity, upon disclosure, to recall the witness for cross-examination); *see also Bencs*, 28 F.3d at 561 (whether analyzed as violating either the Jencks Act or *Brady*, defendant's claim failed because witness statements were disclosed and only timing of disclosure was at issue, and defendant claimed that his trial preparation was hindered and, without explanation or example, that his cross-examination of the witnesses was not as effective as it might have been). Defendant was given every opportunity to review the tapes and to recall Hawkins if necessary, but he refused to do so.

Defendant contends, however, that the district court's suggestion to postpone the trial and allow his counsel to review the tapes was untenable because the jury would have perceived the defense as being responsible for the delay. Defendant points out that the district court had already told the jury that the case would be turned over to them that day. However, after it was apprised of the tapes, the district court not only offered to allow defense counsel time to review the tapes, but also offered to advise the jury that any delay was not Defendant's fault, and in fact was no one's fault. Without providing the district court with any explanation as to why he was so adamant about the trial ending on that day, Defendant merely told the court that he did not want to wait another day. Further, the district court explained that any delay would be minimal, considering the fact that by the time the last witness

We also reject Defendant's arguments regarding the tapes of Hawkins' conversations. It is now axiomatic that the prosecution "is required to disclose material exculpatory evidence to a criminal defendant." *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir. 1992) (citing *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963), *vacated on other grounds sub nom. United States v. Mohwish*, 507 U.S. 956 (1993)). However, "[r]eversal for a *Brady* violation is required only where there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different." *Id.* (citation omitted). "Thus, *Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *Id.* Delay violates *Brady* only where the delay causes prejudice. *Id.* The Jencks Act, 18 U.S.C. § 3500, requires the prosecution to supply the defense with any material statement made by a witness to the government that is signed or otherwise verified by the declarant. *Id.*[3] "When *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure." *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994).

We believe Defendant has failed to show that the delay in disclosing the tapes violated *Brady* inasmuch as he has yet to point to any information on the tapes that would have undermined Hawkins' testimony or even arguably changed the outcome of his trial. *See Patrick*, 965 F.2d at 1400. In any event, the government admitted at trial, and concedes on appeal, that the tapes were subject to the Jencks Act and should have been disclosed. It likely would have been preferable for Defendant's counsel to have reviewed the tapes for any possible exculpatory information. *See Bencs*, 28 F.3d

---

[3] The Act provides, "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500.

that only Steen was in the banks and not Defendant. However, physical evidence is not required to sustain a conviction. *United States v. Evans*, 883 F.2d 496, 501-02 (6th Cir. 1989). Defendant further argues that although Steen testified that Defendant and Hawkins forced him to rob the banks, Hawkins testified that it was Steen who planned the robberies. However, to the extent there were inconsistencies with regard to who initiated the idea of robbing the banks and whether Defendant actually told Steen to rob the banks, the jury was able to make its own determinations. The jury obviously credited Steen's testimony over Hawkins' testimony, which was within the jury's province. *See United States v. Latouf*, 132 F.3d 320, 330-31 (6th Cir. 1997) (explaining that "issues of witness credibility are for the jury;" and the jury is entitled to "special deference" with regard to the "resolution of questions of credibility"). Further, "[c]hallenges to the credibility of a witness are not . . . challenges to the sufficiency of the evidence, but instead are challenges to the quality of the government's evidence." *Id.* (citing *United States v. Farley*, 2 F.3d 645, 652 (6th Cir. 1993)).

Defendant, however, appears to argue that Steen did not present "competent" testimony because Steen had been involuntarily committed at one point. To the extent Defendant raises such an argument, we reject it. There is no evidence in the record showing that Steen was incompetent to testify. At trial, defense counsel raised the fact that after Steen was taken into custody, he was hospitalized. Steen testified that he heard voices in his head. He also contended that "they" tried to say he was insane. On redirect, Steen testified that in his own criminal case, in which he pleaded guilty in juvenile court to bank robbery, the district court had him undergo a psychological examination. That judge found Steen competent. This is the only evidence regarding Steen's competency that Defendant points to in the record. Moreover, the federal rules of evidence provide that "[e]very person is competent to be a witness . . . ." Fed. R. Evid. 601. According to the Advisory Committee Notes, "[a] witness wholly without capacity is difficult to imagine," and "[t]he

question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence." *Id*. (citing 2 Wigmore §§ 501, 509); *see also United States v. Phibbs*, 999 F.2d 1053, 1070 (6th Cir. 1993) ("As long as a witness appreciates his duty to tell the truth, and is minimally capable of observing, recalling, and communicating events, his testimony should come in for whatever it is worth."). Further, the jury heard all of the evidence regarding Steen's alleged incompetence and any other impeaching evidence, and decided to credit his testimony. Once a jury has "ample opportunity" to hear the evidence impeaching a witness and still chooses to believe that witness, it is generally "not for this Court to substitute its opinion for that of the jury in determinations of credibility." *Latouf*, 132 F.3d at 331 (citing *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985)). Further, as noted previously, much of Steen's testimony regarding the details of the robberies was corroborated by Hawkins.

Finally, Defendant claims that Steen's version of the events that transpired during and after the robbery contained inconsistencies or otherwise made no sense. For instance, although Steen testified that he dropped the cash and firearm and changed clothes after the first robbery, neither Hawkins, Defendant, nor the authorities were able to find any of these items. Defendant also contends that Steen's story that Defendant tried to kill him made no sense inasmuch as Steen also testified that Defendant also helped him to move to Michigan and Cleveland. According to Defendant, if he wanted Steen dead, he could have killed him in Michigan or Cleveland and would not have helped him move to different places. However, even assuming the authorities were unable to find some of the items Steen testified he discarded or assuming Defendant did not intend to kill Steen as the latter testified, this has nothing to do with and in no way contradicts evidence that Steen robbed the banks. According to both Steen and Hawkins, Steen robbed the banks with Defendant's assistance and with weapons supplied by Defendant. We therefore find that there was sufficient evidence to support Defendant's convictions for the crimes charged.

**G.    Whether the government engaged in misconduct by failing to disclose two witnesses pre-trial and failing to turn over possible exculpatory evidence to the defense, such that his convictions must now be vacated**

Defendant contends that the government violated his due process rights and engaged in misconduct by (1) failing until the middle of trial to disclose two witnesses, and (2) failing to timely turn over tapes of Hawkins' conversations that were made while he was in jail. Defendant contends that when the tapes were finally revealed to him, he was placed in the position of requiring the jury to adjourn for the day to allow defense counsel time to review the tapes or proceeding with trial. He argues that the district court had already informed the jury at the beginning of the day that the case would be handed over to them that day. He contends that any delay would have been perceived by the jury as being his fault.

Defendant further contends that these alleged errors affected the fairness of the judicial proceedings in this case and warrant overturning his convictions. This Court reviews for abuse of discretion the trial court's choice of remedies, such as its failure to grant a mistrial, relating to the prosecutor's late disclosure of discoverable materials. *See, e.g., United States v. Ross*, 245 F.3d 577, 584 (6th Cir. 2001); *United States v. Pope*, 574 F.2d 320, 325-27 (6th Cir. 1978).

We find neither of Defendant's arguments meritorious. Defendant fails to point to any authority for the proposition that the government was required pre-trial to disclose its witnesses. "Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) (citing Fed. R. Crim. P. 16)). In addition, Defendant fails to show that the government's failure to disclose the witnesses earlier was in bad faith or that he was prejudiced by the timing of the disclosure. Only one witness, Joan Harry, actually testified, and her entire testimony consisted of two pages of the entire trial transcript.

the case on the evidence). Further, "[t]here is no constitutional prohibition in jurors simply knowing parties involved or having knowledge of the case." *Id.* (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1320 (6th Cir. 1996)). Therefore, merely because Stephen knew the mother of a government witness, without more, does not rise to the level of prejudice for purposes of declaring a mistrial.

We also note that the district court suggested bringing Stephen into court, presumably for questioning, but that defense counsel and the prosecution both agreed to allowing Stephen to remain as a juror until the end of trial, and then dismissing her as an alternate. In addition, prior to opening statements, the district court instructed the jury not to discuss the case until they had heard all of the evidence and retired to deliberate. There is no evidence that this directive was not followed. Therefore, Defendant has not shown that he was prejudiced by the district court's failure to hold a hearing regarding whether Stephen's knowledge affected the other jurors for purposes of declaring a mistrial. *See United States v. Griffith*, 17 F.3d 865, 869, 880 (6th Cir. 1994) (rejecting an argument that the district court should have granted a mistrial based on juror misconduct, and explaining that where failure to hold a hearing on juror misconduct is raised for the first time on appeal, defendant must demonstrate that actual prejudice occurred); *see also Maxwell*, 160 F.3d at 1077 (holding that although one dismissed juror admitted during trial to knowing defendant's mother, district court did not err in failing to hold a hearing to determine possible taint on remaining jurors as the case did not involve *outside* contact with a juror or *statements among jurors* that indicated taint). The Court in *Maxwell* held that absent proof of actual prejudice that the defendant had not been tried by an impartial jury, such prejudice would not be presumed. *Id*. The same holds true here, as Defendant has advanced no proof, but only speculation that he was not tried and convicted by an impartial jury.

### B.  Whether the indictment was defective for failing to include all of the essential elements of the crimes charged

Defendant first contends that his sentence of twenty-five years on count four must be vacated because he was indicted by the grand jury only for violations of 18 U.S.C. § 924(c)(1)(A)(ii), which carries a term of seven years' imprisonment, and not under 18 U.S.C. § 924(c)(1)(C)(1)(i), which states that for a second or subsequent conviction, a defendant shall be sentenced to a twenty-five-year term of imprisonment. Defendant also claims that his indictment failed to allege the "essential element" of the type of firearm involved in the crime, and thus the indictment must be dismissed. Defendant further argues that the indictment was defective because it failed to state what, if any, affirmative act in furtherance of the crimes charged that he performed with respect to his aiding and abetting offenses. Defendant contends that because the indictment failed to identify the specific acts that he was alleged to have performed, the indictment did not list every essential element of the crime and was thus deficient. We find none of these arguments persuasive.

This Court generally reviews challenges to the sufficiency of an indictment *de novo*. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). However, where a defendant does not challenge an indictment until appeal, the "indictment must be construed liberally in favor of its sufficiency." *Id.; United States v. Harris*, 523 F.2d 172 (6th Cir.1975). "Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime." *Gatewood*, 173 F.3d at 986 (citation omitted).

Defendant primarily relies on *Castillo v. United States*, 530 U.S. 120 (2000), to support his argument that his indictment was defective for failing to include the type of firearm involved in the offenses. In *Castillo*, the Supreme Court dealt

with the issue of whether under the firearm statute, the type of weapon involved was a sentencing factor or an element of the crime to be determined by a jury. *Id*. at 121. The Court ultimately held that Congress intended that firearm type be considered an element of a separate aggravated crime and not merely serve as sentencing factor. *Id*. at 131. In *Castillo*, the defendant's sentence was increased when at sentencing, the district court made a factual determination that the type of gun the defendant possessed included machine guns, and accordingly imposed a higher sentence as was prescribed by the statute. 530 U.S. at 122. In the instant case, however, Defendant was charged and convicted under the general firearm provision of 18 U.S.C. § 924(c)(1)(A). His sentence was not enhanced because of the type of firearm used in the crime, and his argument is without merit.

Likewise, Defendant's indictment was not defective and Defendant does not have to be resentenced, because his indictment did not charge him with a violation under § 924(c)(1)(C)(i). As stated, that provision provides that for a second or subsequent conviction under the firearm statute, a defendant must be sentenced to a term of twenty-five years. In the instant case, Defendant was convicted for two counts of violating § 924(c)(1)(A). The district court sentenced him to seven years for the first conviction (count two), and pursuant to § 924(c)(1)(C)(i), the court sentenced Defendant to twenty-five years for the second conviction (count four).

Defendant relies primarily on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to support his argument that because the fact of his second or subsequent conviction increased his sentence, that fact should have been alleged in the indictment. *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. *Apprendi* also explained that a judge's role in sentencing a defendant is "constrained at its outer limits by the facts alleged in the indictment and found by the jury." *Id*. at 483 n.10. In the instant case, Defendant actually complains that a prior

requiring reversal of his conviction. He contends that this is especially so because the particular government witness was disclosed to the jury before trial. We disagree, and find no error that would require reversal of Defendant's conviction.

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to trial by an impartial jury. *United States v. Henning*, 286 F.3d 914, 921 (6th Cir. 2002). Defendant primarily relies on *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000), to support his argument that the district court erred in not declaring a mistrial and conducting a hearing on the effect that Stephen's knowledge of the witness' mother had on the other jurors. We find *Wolfe* wholly distinguishable from the instant case.

In *Wolfe*, a case in which the defendant had preserved his error for appeal, the defendant had been convicted for murder in what the concurring opinion called a "sensational killing." 232 F.3d at 499 (Wellford, J., concurring). The defendant argued that the state trial court allowed a jury to convict him although there was evidence that at least four members of the jury were biased. *Id*. at 500. Agreeing with the defendant, this Court pointed out that two jurors noted during voir dire their close and longstanding relationships with the murder victim's parents. *Id*. at 501. A third juror admitted to listening to and reading news accounts of the case and doubted whether she could put aside what she had read and heard, and decide the case based on the evidence at trial. *Id*. The fourth juror expressed doubt as to whether he would require the prosecution to prove its case beyond a reasonable doubt. *Id*. Despite these jurors' admissions of bias, the trial court allowed them to serve on the jury.

In the instant case, there is no evidence that any of the jurors, including Stephen, indicated that they could not render a fair and impartial verdict. *See Wolfe*, 232 F.3d at 502 (explaining that in determining whether the trial court erred in denying the defendant's for-cause challenges, this Court had to ask whether a juror's protestations of impartiality could be believed, and whether the juror swore that she could decide

As we held in *Gibbons*, "[t]he general double jeopardy tests cannot be applied to section 924(c) since a section 924(c) charge is always predicated upon the violation of another statutory offense. . . . The underlying crime of violence . . . [on] which a section 924(c) conviction is, by definition, based will never require proof of any fact for which section 924(c) itself does not require proof." 994 F.3d at 302. Because Congress expressly provided that courts may impose punishment for a violation of § 924(c) in addition to the punishment imposed for the predicate felony, Defendant's double jeopardy arguments lack merit. *United States v. Moore*, 917 F.2d 215, 229-30 (6th Cir. 1990) (rejecting double jeopardy argument where a defendant's sentence is enhanced under § 924(c) when applied in connection with the predicate offense of armed robbery of a post office).

**F.    Whether the district court should have held a hearing or taken some other action upon discovering during trial that a juror knew the mother of a government witness**

Defendant contends for the first time on appeal that the district court should have, among other things, declared a mistrial because during the second day of trial, a juror, Karen Stephen, informed the court that she worked with the mother of a government witness. Defendant failed to raise the issue below and we therefore review his claim for plain error. *See United States v. Maxwell*, 160 F.3d 1071, 1076 (6th Cir. 1998) (holding that Court would review for plain error defendant's argument that district court should have conducted a hearing to determine the effect on the jury of a revelation that one juror knew the defendant's mother).

At the end of the second day of trial, juror Stephen informed a member of the judge's staff that she worked with the mother of a government witness who had just testified. Defendant contends that instead of removing the juror immediately and determining whether there was any residual taint, the court improperly allowed the juror to remain and removed her only at the end of the proceedings, thereby

conviction for aiding and abetting in the brandishing of a firearm (count two) was used to enhance his sentence after a subsequent conviction for the same crime (count four). Therefore, under *Apprendi*, his sentence under count four could indeed be increased to twenty-five years, and § 924(c)(1)(C)(i) did not need to be pleaded in the indictment. *Id*. at 490. Morever, Defendant's argument is foreclosed by authority from the Supreme Court and this circuit. *See Deal v. United States*, 508 U.S. 129, 130 (1993) (holding that in case where defendant was convicted of six bank robberies and six counts of carrying a weapon in relation to that "crime of violence," pursuant to 18 U.S.C. § 924(c)(1), that second through sixth conviction constituted second or subsequent convictions within the meaning of the statute and the sentence could be enhanced accordingly); *United States v. Langan*, 263 F.3d 613, 627 (6th Cir. 2001) ("[I]f a defendant is charged with and convicted of separate offenses to which § 924(c) applies, the separate convictions on the associated § 924(c) counts can be used to determine previous and subsequent convictions.").

Defendant next contends that the indictment was defective because it failed to state what, if any, affirmative act in furtherance of the crimes charged he performed. Defendant contends that because the indictment failed to identify the specific acts that he was alleged to have performed, the indictment did not list every essential element of the crime and was thus deficient. We disagree. As we have explained, the essential elements of aiding and abetting are (1) an act by the defendant that contributes to the commission of the crime, and (2) an intention to aid in the commission of the crime. *Lowery*, 60 F.3d at 1202. An indictment is not defective merely because it does not explain in what respect the defendant aided or abetted. *See Harris*, 523 F.2d at 174 (holding that indictment that charged the defendant with aiding and abetting the commission of an armed bank robbery and assault with a dangerous weapon in violation of 18 U.S.C. §§ 2, 2113(a) and (d), fairly informed him of the crimes charged, enabled him to prepare and provide a

defense, and provided a basis for a plea of double jeopardy if charged again with these offenses).

The indictment in the instant case charged Defendant with aiding and abetting in two bank robberies and in using, carrying, possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2 and 2113(a) and (d). Under the liberal standard of review with which we must consider the indictment, we are convinced that it provided Defendant with adequate notice of the crimes for which he was charged and was not constitutionally defective. *Gatewood*, 173 F.3d at 986; *Harris*, 523 F.2d at 174. Accordingly, Defendant's argument that his indictment was defective inasmuch as it failed to detail the specific affirmative acts he performed for each count is without merit.

**C. Whether the district court should have given a specific jury instruction that required the jury to unanimously agree on the specific affirmative acts Defendant performed in committing his aiding and abetting offenses**

Defendant contends that the jury was required to unanimously agree on what acts constituted aiding and abetting with regard to all four counts of conviction. Defendant argues that the jury verdict is unreliable in that the jury did not unanimously agree on the precise acts in which Defendant engaged while committing his offenses. Again, we disagree.

Defendant failed to object to the challenged jury instruction before the district court; therefore, this Court's review is for plain error. *United States v. Yang*, 281 F.3d 534, 551 (6th Cir. 2002); *United States v. King*, 169 F.3d 1035, 1040 (6th Cir. 1999). "An instruction is not plainly erroneous unless there was 'an egregious error, one that directly leads to a miscarriage of justice.'" *Id*. (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)).

To support his argument, Defendant relies on *Richardson v. United States*, 526 U.S. 813 (1999). *Richardson* involved

determining what punishments the Legislative Branch has authorized." [*Whalen v. United States*, 445 U.S. 684, 688 (1980).] "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

*Id*.

The Court held that 18 U.S.C. § 924(c)(1) is such a statute. Congress made itself unequivocally clear that punishment for violation of that statute was to be imposed in addition to punishment for committing the predicate offense. *Id*.

Relying primarily on *Blockburger*, Defendant argues in his *pro se* brief that this Court must consider whether two offenses were committed in counts one and two. He makes the same argument for counts three and four. He contends that his convictions constitute double jeopardy because they are based on the same series of actions. Similarly, he also argues through counsel that the offense of aiding and abetting in the brandishing of a firearm under 18 U.S.C. § 924(c) punishes the same conduct as that provided for under 18 U.S.C. § 2113. Defendant was convicted of aiding and abetting in *two separate* bank robberies and while doing so placing lives at risk (18 U.S.C. § 2113(a), (d)), (counts one and three), and of aiding and abetting in the use of dangerous weapons during and in relation to each bank robbery (18 U.S.C. § 924(c)), (counts two and four).[2]

---

[2]Defendant also claims that the bank robbery charges in his indictment violate the rule against multiplicity. However, he fails to explain the basis for this argument. The rule against multiplicity is violated only where an indictment charges a single offense in several counts. *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981). Defendant was charged with committing two distinct and separate bank robberies. Each count therefore relates to the robbery of a different bank. Accordingly, the bank robbery charges do not violate the rule against multiplicity. *Id*.

exact same conduct, thus violating the Double Jeopardy Clause. In other words, Defendant argues that his conviction under 18 U.S.C. § 2113(d) contemplated a firearm and therefore his conviction under § 924(c) violated the prohibition against double jeopardy. This Court has rejected similar arguments in the past.

"Generally, an indictment may not charge a single criminal offense in several counts without offending the rule against 'multiplicity' and implicating the double jeopardy clause." *United States v. Hart*, 70 F.3d 854, 859 (6th Cir. 1995) (citation omitted). "The Fifth Amendment prohibition against double jeopardy protects against three harms: second prosecution for an offense after initial acquittal, second prosecution for an offense after an initial conviction, and multiple punishments for the same offense." *United States v. Gibbons*, 994 F.2d 299, 301 (6th Cir. 1994) (citation omitted).

In *Gibbons*, the defendant challenged his conviction and sentence under two counts, conspiracy to distribute crack cocaine and conspiracy to use or carry a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). *Id*. The Court explained that inasmuch as the defendant challenged the constitutional validity of the two counts in the same indictment and his conviction and sentence based on those counts, he invoked the third double jeopardy concern, protection against a multiplicity of punishment. *Id*. "The general test for compliance with the double jeopardy clause looks to "whether each provision requires proof of a fact which the other does not." *Id*. (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). However, the Court explained that this test does not apply "where Congress has authorized punishments which would otherwise be inappropriately cumulative." *Id*. (citing *Whalen v. United States*, 445 U.S. 684, 688 (1980)). The Court further explained:

"[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without

an appeal of a conviction for engaging in a "continuing criminal enterprise" ("CCE") in violation of 21 U.S.C. § 848. *Id*. at 815. That statute defines a "continuing criminal enterprise" as involving a violation of the drug statutes where such violation is a part of a continuing series of violations. 21 U.S.C. § 848(c). When instructing the jury concerning the "series of violations" requirement, the district court explained that the jury had to "unanimously agree that the defendant committed at least three federal narcotics offenses." *Richardson*, 526 U.S. at 816. However, the court further explained that they did not have to agree as to the particular three or more federal narcotics offenses committed by the defendant. *Id*. The jury convicted the defendant, but the Supreme Court reversed, and held that "unanimity in respect to each individual violation is necessary." *Id*.

In *Richardson*, the Supreme Court distinguished between elements of a crime, which it held had to be determined unanimously, and the means by which an element may be accomplished, which does not require unanimity. *Id*. at 817. The Court explained that a federal jury does not always need to "decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id*.

One of the driving forces behind the Supreme Court's decision was the breadth of the CCE statute. The word "violations," which encompasses the "series of violations" that the jury had to find in order to convict under the CCE, covered two chapters of the Federal Criminal Code regarding drug crimes, which involved approximately ninety numbered sections. *Id*. at 819. Therefore, the CCE required that the defendant engage in a "continuing series of violations" of a broad range of specified criminal statutes. *Id*. The Court was concerned that the statute's word "'violations' covers many different kinds of behaviors of varying degrees of seriousness," and that failing to treat each violation as a separate element would create a risk that a guilty verdict might mask "wide disagreement among the jurors about what

the defendant did, or did not, do." *Id*. The Court in *Richardson* noted that some of the various acts that may be alleged as violations for purposes of the "series" requirement of the CCE statute encompass a wide range of activities. *Id*.

In the instant case, § 2 of Title 18 provides "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission or willfully causes an act to be done by himself or another is punishable as a principal." 18 U.S.C. § 2(a)-(b).

The district court instructed that the jury had to find that:

Jordell Steen's actions satisfied each of the essential elements–of the elements of using or carrying a firearm . . . . Second, that the defendant did something to assist Jordell Steen in committing an armed bank robbery. Third, that at the time the defendant acted, he intended to assist or assisted Jordell Steen in committing the robbery with knowledge that he was armed.

(J.A. at 296.) The district court further instructed the jury that it could find Defendant guilty if it determined that he "intentionally helped, encouraged, commanded or induced another to commit the crime. A person who does this is called an aider and abetter." (Trial Transcript at 14-15, Jury Instructions.)

Contrary to Defendant's argument, the aiding and abetting statute is vastly different from the statute at issue in *Richardson*, and the finite terms listed under 18 U.S.C. § 2 describe various means by which the elements of the crime can be accomplished, and do not require jury unanimity as to each of these terms. *Richardson*, 526 U.S. at 817; *cf. United States v. Powell*, 226 F.3d 1181, 1194-96 (10th Cir. 2001) (rejecting the argument that under federal kidnapping statute, district court was required per *Richardson* to give jury unanimity instruction with regard to whether defendant "seize[d], "confine[d]" or "inveigle[d]," the victim, as those statutory terms represented means by which the kidnapping could be accomplished and not elements).

may have reached a non-unanimous decision with regard to whether he either "possessed the firearm in furtherance of the crime" or "used or carried it during and in relation" to the underlying offense, that problem was clarified by explicit jury instructions. *Adesida*, 129 F.3d at 849; *see also Campbell*, 279 F.3d at 398 (explaining that "vice of duplicity" is that the jury might not reach a unanimous verdict on a particular offense) (citation omitted); *Nattier v. Coley*, 127 F.3d 655, 657-58 (8th Cir. 1997) (holding on *de novo* review that curative jury instruction corrected any duplicity that might have occurred in indictment by charging in one count two separate objects of an alleged conspiracy); 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 142, at 16 (3d ed. 1999). Accordingly, we reject Defendant's argument that his substantive rights were affected by any alleged duplicity in the indictment.

### E. Whether Defendant's convictions violated the Double Jeopardy Clause or were otherwise multiplicitous

Defendant failed to raise his double jeopardy claim before the trial court, and thus this forfeited claim is reviewed only for plain error. *United States v. Branham*, 97 F.3d 835, 842 (6th Cir. 1996). "Rule 52(b) of the Federal Rules of Criminal Procedure provides us with authority to correct plain errors that were not raised during the proceedings before the district court." *Id*. (citing Fed. R. Crim. P. 52(b)). Under plain error review, before we can correct an error not raised below, Defendant must show that there was an error, that the error was plain, and that it affected his substantial rights. *United States v. Cotton*, 122 S. Ct. 1781, 1785 (2002). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

Defendant contends that counts one and two involve the exact same conduct and counts three and four involve the

offenses. *See United States v. Pleasant*, 125 F. Supp. 2d 173, 176 (E.D. Va. 2000) (holding that § 924(c) defines two separate crimes, and dismissing indictment as duplicitous where indictment charged an amalgam of conduct taken from different parts of the statute ).

However, whether, in fact, § 924(c) constitutes separate offenses is a question we need not resolve for purposes of the instant appeal. Even assuming § 924(c) constitutes two offenses, Defendant fails to show that his substantive rights were affected by any alleged errors in his indictment. *Adesida*, 129 F.3d at 849.

With regard to counts two and four, the district court instructed as follows:

> The crime of using a firearm *during and in relation* to a bank robbery as charged in Counts 2 and 4 of the indictment has three essential elements which are: One, a person committed a crime of violence, in this case, a bank robbery as described in Counts 1 and 3 of the indictment. Two, *during and in relationship to the commission, a firearm was used or carried.* Three during, the robbery, the firearm was brandished. Here are some definitions of the terms used in this statute: To "use a firearm" means to actively employ a firearm during the crime of violence. A firearm is "actively employed" if it is discharged, brandished, displayed or discussed during the crime. A firearm is used or carried "in relation to" a crime of violence when the firearm furthered the purpose the crime and its presence was not the result of coincidence.

(Trial Transcript at 14-15, Jury Instructions); *see also* J.A. at 296 (district court explaining to jury that it must be convinced the Steen's conduct satisfied each element of using or carrying a firearm that the court had previously described).

Juries are presumed to follow the instructions they are given. *See Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000). To the extent Defendant complains that the jury

We also note that at least one sister circuit has squarely addressed and rejected Defendant's argument. *See United States v. Kim*, 196 F.3d 1079 (9th Cir. 1999). In *Kim*, the defendant was convicted of aiding and abetting the possession of stolen goods. *Id*. at 1081. The jury instructions provided that to convict defendant of aiding and abetting, the jury would have to find that he "helped, counseled, commanded, induced or procured, that is to get or bring about by some effort, [the principal] to commit [the] offense." *Id*. at 1081 n.3. The defendant argued, among other things, that his conviction could have resulted in different jurors finding that he had committed different acts. *Id*. at 1082. He contended that some jurors may have believed that he "commanded," while others may have considered that he "ordered" or "assisted" his co-defendant to possess stolen goods. *Id*. at 1083. Therefore, he argued that the district court should have given a special unanimity instruction such that the jurors could unanimously agree on the manner in which he carried out the crime. The Ninth Circuit rejected this argument, holding that the six prohibited acts listed in § 2 of Title 18 represent alternative ways in which a defendant may be held liable for the underlying offense. *Id*. According to the court, it was therefore unnecessary for the jury to unanimously agree on a specific classification of the defendant's conduct. *Id*. at 1083 (citing *Schad v. Arizona*, 501 U.S. 624 (1991)). The same reasoning holds true in this case, and although there may have been various means by which Defendant aided and abetted in the underlying offenses for which he was convicted, no unanimity instruction with regard to these various means was necessary. *Kim*, 196 F.3d at 1083; *Powell*, 226 F.3d at 1194-96.

### D. Whether counts two and four of defendant's indictment must be dismissed because they are duplicitous

Defendant contends that counts two and four of the indictment charging him with violating 18 U.S.C. § 924(c) were duplicitous and must be dismissed because they charged two distinct offenses within each count. Whether an

indictment  is duplicitous is a legal question that this Court reviews *de novo*. *United States v. Campbell*, 279 F.3d 397, 398 (6th Cir. 2002).    The government contends that Defendant has waived this issue inasmuch as he failed to raise it below, and pursuant to Fed. R. Crim. P. 12(b)(2), defects in an indictment, unless they pertain to jurisdiction, must be raised prior to trial. *See United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997).  Where a defendant fails to raise the issue of duplicity before trial, the case will proceed to trial under the presumption that the district court will clear up any perceived error with proper jury instructions. *Id.*

However, this Court also has held that a defendant "may raise the alleged harm stemming from the duplicitous indictment at trial or on appeal even if he does not object to the duplicitous indictment before trial." *Id*.  For instance, the defendant can raise the fact that because of the indictment, it is unclear whether the jury's verdict with respect to either offense was unanimous. *Id*.  Such an error need not be raised before trial because it concerns not only a technical error but also a defendant's substantive rights, i.e., the right to a unanimous jury verdict. *Id*.

Defendant contends that the firearm statute 18 U.S.C. § 924(c)(1)(A) charges two separate offenses: (1) using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime; and (2) possessing a firearm in furtherance of such crime.  The statute, in pertinent part, reads as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall,

> in addition to the punishment provided for such crime of violence or drug trafficking crime . . . (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . . .

18 U.S.C. § 924(c)(1)(A)(ii).

Counts two and four of Defendant's indictment read as follows: "David Devon Davis, did, in furtherance of a crime of violence . . . that is the armed bank robbery charged in . . . the indictment, use, carry and possess and brandish a firearm in furtherance of that crime, and did aid and abet in this offense." (J.A. at 23, 25.)  Defendant contends that the indictment charged him with "using or carrying" the firearm, which relates to one crime, and with "possessing" the firearm, which relates to another.

An indictment is duplicitous if it sets forth separate and distinct crimes in one count. *Campbell*, 279 F.3d at 398.  "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both." *United States. v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997).  "A general verdict of guilty will not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all." *Id*. "The yardstick in determining whether there is duplicity or multiplicity is whether one offense or separate offenses are charged and . . . this is a difficult and subtle question." 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 142, at 17 (3d ed. 1999).  "The test announced most often in the cases is that offenses are separate if each requires proof of an additional fact that the other does not." *Id*. (footnotes omitted); *see also Adesida*, 129 F.3d at 849 (explaining that indictment contained a duplicitous count inasmuch as it charged two separate offenses, each requiring different proof); *United States v. Barnett*, 418 F.2d 309, 312 (6th Cir. 1969).

At least one district court has adopted Defendant's argument that 18 U.S.C. § 924(c)(1)(A) charges two separate