NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 4, 2008
Decided December 12, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-3099

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 06 CR 509 |
| RODNEY WILSON, | |
| *Defendant-Appellant*. | David H. Coar, |
| | *Judge*. |

**O R D E R**

A jury found Rodney Wilson guilty of unlawful possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). The district court sentenced him to 95 months' imprisonment. Wilson appeals, arguing that the evidence was insufficient to support his conviction and that the district court abused its discretion on a number of evidentiary matters.

**BACKGROUND**

In the early hours of January 1, 2006, Chicago police officers Misolaw Dobek, Scott Hall, and other members of their team were on patrol on Chicago's West Side when they heard gunshots fired. The officers parked their vehicle and walked in the direction of the blasts. Their

investigation led them to a nearby residence where Wilson and others were attending a New Year's Eve party. Dobek and Hall ultimately recovered from the scene a .357 Magnum handgun and seven matching bullets and placed Wilson under arrest.

At trial, Dobek and Hall testified for the government. Dobek testified that, after hearing the gunshots, he and his fellow officers were walking down an alley behind the 300 block of North Lotus when Dobek spotted two people standing on the back porch of a residence. Moments later, a third man, later identified as the defendant Wilson, walked on to the porch holding a gun. When Dobek announced his office, Wilson ran inside the first floor of the building. Dobek gave chase, following Wilson into the house and through several rooms before catching up with him near the front door. There, Dobek saw Wilson toss the handgun into a box near the front door. After detaining Wilson, Dobek recovered the gun from the box together with seven matching bullets found in Wilson's coat pocket.

Wilson was placed in the police squad car and advised of his *Miranda* rights, at which time he told Dobek, "[t]his is my first New Year's out of prison, and I just wanted to shoot a gun." Wilson later repeated this statement during an interview with the officers at the police station.

Hall's testimony was generally consistent with Dobek's. Hall stated that he saw an armed man, later identified as Wilson, standing at the top of the rear staircase behind 319 North Lotus. When Hall yelled, "[P]olice, drop the gun," Wilson ran into the residence. After Dobek entered the apartment in pursuit of Wilson, Hall followed, chasing Wilson through several rooms before catching up with him as he attempted to exit the front door. As Hall approached, Wilson tossed the gun into a cardboard box.

Officer Herbert Keeler, an evidence technician with the Chicago Police Department, testified that he conducted latent fingerprint examinations on the recovered firearm, which did not reveal any prints. Keeler explained that the absence of prints on the gun was not unusual, because of the firearm's blue steel finish which retards water and dust. Keeler opined that, since fingerprints are made up of 99% water, the finish prevents any fingerprints from remaining on the gun.

The government also called Shirley Coleman to testify. Coleman, who resided at the apartment where Wilson was arrested , but was away on the night of the incident, testified that she had a conversation with Wilson in which Wilson claimed ownership of the gun recovered by police. Coleman stated that she had known Wilson for some 34 years and provided her testimony only in response to a federal subpoena.

Wilson presented testimony from three witnesses who all claimed to have been present at the New Year's Eve party. Diane Coleman and Charise Whittington stated that they were

sitting at the dining room table when three police officers entered the apartment through the back door. According to Whittington, the officers instructed the partygoers to sit down, then searched the apartment. Each witness stated that she neither saw police chasing Wilson through the apartment nor saw Wilson holding a gun at any time during the night.

Terrence Whitehead testified that he arrived at the party shortly before midnight with a gun, which he placed in a box near the apartment's entranceway. Upon Wilson's arrival a short time later, Whitehead instructed Wilson to retrieve some liquor from his car and lent Wilson his jacket to run the errand. Before he could do so, however, Whitehead and Wilson heard gunshots. Moments later, they realized police were at the back door, so they walked toward the rear of the apartment. When they encountered the police, they were instructed to sit down while the officers searched the apartment. The officers' search of the residence uncovered the gun that Whitehead had placed in the box, while their search of Wilson's person produced the bullets from Whitehead's jacket which Wilson was wearing. Whitehead stated that he purchased the gun a year earlier. He understood that by claiming to be in possession of the gun on the night in question he left himself open to prosecution.

## ANALYSIS

On appeal, Wilson first contends that the evidence was insufficient to support his conviction for unlawful possession of a firearm by a felon. In reviewing a sufficiency of the evidence challenge, we will view all the evidence and draw all reasonable inferences in the light most favorable to the prosecution, overturning the conviction only if the record is devoid of evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004); *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003).

To meet its burden of proof on the unlawful possession of a firearm by a felon charge, the government had to show that (1) Wilson knowingly possessed a gun; (2) the gun traveled in interstate commerce; and (3) Wilson had previously been convicted of a felony. *See* 18 U.S.C. § 922(g)(1). Because the parties stipulated that Wilson was a convicted felon and that the gun had traveled in interstate commerce, the only issue before the jury was whether Wilson knowingly possessed a firearm. Wilson contends that the testimony of Officers Dobek and Hall was incredible as a matter of law. He argues that the officers' accounts of the events on the night in question were inconsistent, refuted by the absence of Wilson's fingerprints on the recovered firearm, and further undermined by the testimony of three defense witnesses who all claimed that they never saw Wilson possess a gun.

We find, however, that there is ample evidence to support the jury's finding of unlawful possession. At trial, Officers Dobek and Hall testified consistently that they saw Wilson

holding a gun on the back porch, run through the apartment in an effort to flee, and drop the weapon in a box near the front door. Dobek and Hall remained in close proximity to Wilson throughout the brief chase and only momentarily lost sight of the gun. Moreover, Dobek testified that Wilson later twice admitted ownership of the gun. Wilson's admission was also supported by the testimony of Shirley Coleman, who testified that Wilson told her that the gun belonged to him.

Wilson identifies several inconsistencies in the officers' testimony which he argues are illustrative of the unreliability of their version of events. Specifically, he notes that while Dobek stated that he saw a total of three men standing on the back porch, Hall stated that he saw only two men; while Dobek testified that the other guests at the party were seated in the dining room, Hall stated that they were in the living room; and while Dobek stated that he saw Wilson throw the gun behind him, Hall said that Wilson threw the gun in front of him. In our view, these are merely minor discrepancies concerning details from an arrest that took place some 18 months prior to trial. Moreover, the jury heard these inconsistencies and was entitled to discount them.

Also, we find no merit to Wilson's contention that the absence of fingerprints on the recovered handgun casts doubt on the reliability of the officers' version of events. Although Officer Keeler did testify that tests conducted on the recovered weapon did not reveal Wilson's fingerprints, he also stated that the absence of prints on the gun was not unusual due to the firearm's blue steel finish that acted as a retardant to water: the predominant substance of which fingerprints are comprised. Because the finish likely prevented any fingerprints from remaining on the gun, the absence of prints is not the exculpatory evidence Wilson thinks it to be.

Finally, we find equally unavailing Wilson's reliance on the testimony of his defense witnesses. While Whitehead did claim ownership of the recovered gun, the jury learned on cross-examination that Whitehead was Wilson's fellow gang member and that his testimony may have been influenced by bias. As was true with each defense witness, the jury was entitled to reject Whitehead's testimony in favor of the testimony of the officers. This court does not second-guess the jury's credibility determinations in a sufficiency challenge, except in very rare cases. This is not one of them.

Wilson next contends that the district court erred in several evidentiary rulings which, when considered cumulatively, denied him a fair trial. We review a district court's evidentiary decisions for an abuse of discretion. *United States v. Owens*, 424 F.3d 649, 653 (7th Cir. 2005). Furthermore, when reviewing evidentiary errors, we will reverse and order a new trial only when we find that the improper admission was not harmless. *Id*.

Wilson's first claim of error concerns the district court's decision to allow the introduction of evidence concerning Wilson's gang membership. He argues the probative value of such evidence was minuscule while the prejudicial effect was great. After the jury learned he was a gang member, he contends, it was more inclined to view him as a bad person. When this Court reviews a determination that the probative value of evidence is not substantially outweighed by its prejudicial effect, we accord the district court's decision great deference, disturbing it only if no reasonable person could agree with the ruling. *United States v. Toro*, 359 F.3d 879, 884-85 (7th Cir. 2004).

Although it can be relevant, evidence of street gang affiliation is also inflammatory. *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996). Accordingly, due to the risk of unfair prejudice, we require district courts to give careful consideration to determining the admissibility of gang membership evidence. *Id.* This court has held evidence of gang membership admissible for purposes such as impeachment, to show bias, and to support conspiracy or joint venture theories. *United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir. 1990).

Here, the district court denied Wilson's motion *in limine* to preclude any mention of his membership in the Four Corner Hustlers street gang. During the government's cross-examination of Whitehead, Whitehead was asked whether he and Wilson were members of the same street gang. He responded that they were. After closing arguments, the district court judge explained to the jury that:

> "You have heard testimony that the defendant may have been a member of a gang with Terrance Whitehead. It is not unlawful to be a member of or associated with a gang. You may consider this evidence only on the question of whether Terrance Whitehead has a bias that might lead him to slant unconsciously or consciously his testimony in favor of or against the defendant or the government. You may not consider this evidence for any other purpose."

In this instance, evidence that Wilson and Whitehead were fellow gang members was probative of Whitehead's potential bias concerning his claim that he, and not Wilson, was the actual owner of the gun recovered by the police. The evidence provided a possible explanation for why Whitehead would claim responsibility for the crime with which Wilson was charged. The interest, bias or prejudice of any witness is normally available as cross-examination material. As the district court made clear to the jury, the evidence came in only for this limited purpose, and while it may have had some prejudicial effect, it is only unfairly prejudicial evidence which must be excluded. *United States v. Hicks*, 368 F.3d 801, 806-07 (7th Cir. 2004). The district court acted well within its discretion in reaching the determination that the evidence's probative value was not outweighed by its prejudicial effect.

Wilson also contends that the district court abused its discretion in granting the government's motion to preclude the use of citizen complaints filed against Officers Dobek and Hall as a method of impeachment. Fed. R. Evid. 608(b) provides that, although specific instances of misconduct of a witness intended for the purposes of attacking or supporting the witness' character for truthfulness may not be proved by extrinsic evidence, they may, in the discretion of the court, be inquired into on cross-examination of a witness. Fed. R. Evid. 608(b). However, the probative value of such evidence must still not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id*. In this instance, accusations that Officers Dobek and Hall engaged in misconduct were merely that: accusations, and offered little indicia of reliability. Thus, the district court, acting within its discretion, was free to determine that cross-examination into the specific instances of alleged misconduct would have been of limited probative value. *See United States v. Saunders*, 166 F.3d 907, 920 (7th Cir. 1999).

Wilson's final evidentiary contention is that the district court abused its discretion in precluding his attempt to impeach Officers Dobek and Hall with statements they provided to Mark Padilla, special agent with the Bureau of Alcohol, Tobacco, and Firearms. Prior to trial, agent Padilla interviewed Officers Dobek and Hall regarding the events of the night in question and subsequently memorialized much of the information in a written report. At trial, Padilla was called as a defense witness and questioned about the substance of his interview with Dobek. Padilla was asked several questions that essentially concerned whether Dobek's recounting of the events leading up to Wilson's arrest was consistent with his in-court testimony. After Padilla responded that Dobek had indeed provided the information in question, defense counsel asked Padilla if he had made written notation of those statements. In doing so, counsel sought to impeach Dobek by omission: that is, by getting Padilla to acknowledge that several of the factual statements made by Dobek during the course of his in-court testimony were absent from Padilla's written account of the incident. Defense counsel's attempt to elicit similar inconsistencies concerning Hall's statements was precluded by the trial court entirely.

Several fundamental problems exist with defense counsel's approach to this proposed impeachment. Initially, as the impeachment pertains to Dobek's statements, counsel failed to confront Dobek with his statements before seeking to highlight their absence from Padilla's report.

Moreover, Dobek was not impeached by the absence of factual information in the report because Padilla, not Dobek, prepared it. Highlighting omissions from Padilla's report does not establish that Dobek failed to provide facts consistent with his in-court testimony, but only that Padilla failed to memorialize them. As the court correctly noted during a side bar, "you can use any statements that the officers made to this witness that are inconsistent with what they

testified to. I don't think it is appropriate to try to impeach them though with the fact that he didn't include what they said in his report. That's not impeaching."

With respect to defense counsel's intention to impeach Hall through agent Padilla's omissions in the report, counsel did first confront Hall with the statements in question and was subsequently precluded from questioning Padilla regarding those statements. However, the statements at issue concern whether Hall had provided Padilla the same detailed observations concerning the men on the back porch that he had testified to in court. As with the district court's decision to preclude allegations of the officers' misconduct, the court had the discretion to disallow this line of questioning if it determined it was of little probative value. We find no abuse of discretion here. Moreover, even assuming, *arguendo*, the court erred in not allowing the attempted impeachment, the error was harmless. As detailed above, the government presented ample evidence from which a jury could conclude that Wilson's guilt was proven beyond a reasonable doubt.

Accordingly, we AFFIRM Wilson's conviction.