NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0013n.06

No. 09-6394

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Jan 06, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

RONALD COOKS,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Eastern District of Kentucky
at Pikeville

---

**Before:**    **GUY, KETHLEDGE, and WHITE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**   Defendant Ronald Cooks appeals his conviction and sentence on one count of assaulting, resisting, and/or impeding federal officers while engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1) and (b). For the reasons that follow, we affirm.

**I.**

On September 17, 2008, defendant, an inmate at the United States Penitentiary (USP), Big Sandy, got involved in a confrontation with three other inmates in a corridor of the facility and was charged with inflicting bodily injury on one or more federal officers who intervened. Specifically, Officer Oliver Crum saw three black inmates, including the defendant, beating a white inmate. Crum, who was standing 20 to 25 feet away, called for

help and rushed toward the fight while shouting verbal commands for them to stop. Crum pulled one inmate away, jumped in to break up the fight, and ended up on the ground holding onto two inmates with the defendant over them. Other corrections officers who were nearby, including Officers James Cantrell, Wesley Howard, and William Schlick, responded immediately, yelled commands to stop fighting, and physically intervened to subdue the defendant. Defendant, who took a punch at Crum on the ground, continued to resist and struck Cantrell, Howard, and Schlick each in the head as they grabbed his arms.

Crum suffered a fractured jaw, lacerations to the head, and bruising to his eyes and nose, while Cantrell, Howard, and Schlick had busted lips, bruises, and/or scratches. Defendant, who was not injured, testified that he did not hear any verbal commands and did not recognize that those intervening were uniformed corrections officers. Defense counsel also argued that defendant did not land the punch to Crum's head. A security camera in the corridor captured the brief melee (albeit without audio), and the recording was played for the jury at trial.

The one-count indictment charged that defendant "did forcibly assault, resist, oppose, impede, intimidate, and interfere with [USP], Big Sandy, Correctional Officers James Cantrell, Wesley Howard, Oliver Crum, and William Schlick, federal law enforcement officers, inflicting bodily injury upon the officers, while the officers were engaged in the performance of their official duties." *See* 18 U.S.C. § 111(a)(1) and (b). The jury was instructed that "'forcible assault' means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, and includes any

intentional display of force that would give a reasonable person cause to expect immediate bodily harm, whether or not the threat or attempt is actually carried out or the victim is injured." As for the term "bodily injury," which triggers an enhanced penalty, the jury was instructed that it means "(1) a cut, abrasion, bruise, burn, or disfigurement; (2) physical pain; (3) the impairment of a bodily member, organ, or mental faculty; and/or (4) any other injury to the body no matter how temporary."

The jury found defendant guilty at the conclusion of the one-day trial. The district court sentenced defendant as a career offender to a within-Guidelines sentence of 220 months of imprisonment, to run consecutively to the remaining undischarged term of imprisonment that he was already serving. This appeal followed.

## II.

### A.    Indictment

"An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002) (citing *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002)). The decisive criteria for determining whether there is duplicity in an indictment are legislative intent and separate proof. *See United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005). "It is not duplicitous to allege in one count that multiple means have been used to commit a single offense." *Id*. "'The vice of duplicity is that a jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense.'" *United States v. Hood*, 210 F.3d 660,

662-63 (6th Cir. 2000) (citation omitted). The question of whether an indictment is duplicitous is a legal question that we review *de novo*. *Davis*, 306 F.3d at 415.

Defendant argues for the first time on appeal that the one-count indictment in this case actually charged four separate offenses, one offense for each corrections officer named, and created the potential for a non-unanimous verdict. Defendant's reliance on the decision in *United States v. Castano*, 543 F.3d 826 (6th Cir. 2008), is misplaced. *Castano* rested heavily on the determination that 18 U.S.C. § 924(c) was intended to criminalize two distinct offenses: a "carriage" offense which has "during and in relation to" as its standard of participation; and a "possession" offense which has "in furtherance of" as its standard of participation. As such, where both offenses were charged in a single count and the jury instructions mixed the elements, the defendant's § 924(c) conviction was reversed. Except for general principles of duplicity and plain error, however, the *Castano* decision sheds little light on whether the indictment in this case was duplicitous.

The defendant's failure to raise the issue of duplicity prior to trial waives the challenge to the form of the indictment, under the presumption that a jury instruction can clear up any ambiguity created by the duplicity. *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997). Objections made after trial has begun are addressed not to the indictment but to the harm stemming from a duplicitous indictment. *Id*.; *see also Davis*, 306 F.3d at 415. When, as here, the defendant does not object to the indictment prior to trial or to the jury instructions, our review is limited to plain error. *United States v. Kakos*, 483 F.3d 441, 445 (6th Cir. 2007). Under this standard, the defendant must show that there was (1) an error,

(2) that was plain, and (3) that the error affected his substantial rights. *Davis*, 306 F.3d at 417 (citing *United States v. Cotton*, 535 U.S. 625, 631 (2002)). When that showing is made, this court may exercise its discretion to notice the error "but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 535 U.S. at 631-32 (internal quotation marks and citation omitted).

This court has explained that, for purposes of 18 U.S.C. § 111, "a single act of assault against multiple officers constitutes one offense, and therefore does not implicate Sixth Amendment prohibitions on duplicity." *Hood*, 210 F.3d at 663 (citing *Ladner v. United States*, 358 U.S. 169, 176 (1958) (holding that when a defendant fires a single shot at two federal officers there is a single assault)). Further, we explained that: "In differentiating whether an attack against multiple officials is a single assault or multiple assaults, federal courts have inquired whether officers were injured by 'distinct successive criminal episodes, rather than two phases of a single assault.'" *Id.* (quoting *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997) (holding that two events of assault "separated in both time and location" were properly charged in two counts)). Thus, the focus of this inquiry is not on the number of officers involved in the melee, but whether the fight can be separated into distinct successive criminal episodes.

Applying these principles in *Hood*, where the defendant requested a specific unanimity instruction, this court found that the district court had not abused its discretion "in instructing the jury it could convict on the basis of a single assaultive event." *Hood*, 210 F.3d at 663. At issue was defendant's conduct in bursting out of her home with a kitchen

knife in hand and angrily telling two postal inspectors to get off of her porch. While the majority emphasized that the defendant had not lunged at or made threatening statements to either inspector, the concurrence noted that the defendant had held the knife six to twelve inches from one inspector's face. Nonetheless, the court found that the defendant failed to identify separate acts that could plausibly imply two "distinct successive criminal episodes." *Id*.

The circumstances in this case, although not exactly like *Hood*, do not involve four distinct assaultive events. There was not a separation in time or location. Rather, the brief melee that ensued when the four corrections officers intervened in the fight and struggled to subdue the defendant represented a single assaultive event against multiple officers. Irrespective of how many federal officers defendant managed to hit in the process, defendant has not shown that it was error, much less plain error, to instruct the jury that it could convict if it found defendant had assaulted, resisted, or impeded one or more of the named corrections officers.

Moreover, even if the indictment were assumed to be duplicitous, defendant's claims that he reacted in self-defense and without knowledge that he was resisting corrections officers were rejected by the jury. Defendant has not demonstrated a risk of a non-unanimous verdict even if he is correct that some jurors might have believed his claim that he was acting in self-defense as to Crum who was the first to intervene. The evidence presented, including the video recording of the event, supported a unanimous conviction for assault, inflicting bodily injury, on *at least* one of the four federal officers. Assuming the

indictment was duplicitous, defendant is unable to establish that it affected his substantial rights.

## B.      Limitation on Cross-Examination

Defendant claims that the district court denied him a meaningful opportunity to present a complete defense by precluding his attorney from questioning Officer Crum about a pending administrative complaint by another inmate that accused Crum and other officers of making a racially derogatory remark and using excessive force. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); *United States v. Blackwell*, 459 F.3d 739, 752-53 (6th Cir. 2006). Although the government asserts that this claim was waived, a fair reading of the record reflects that defense counsel's statement was merely an acknowledgment of the district court's ruling on the government's motion in limine. We review the district court's evidentiary rulings for abuse of discretion, which is not at odds with a *de novo* review of constitutional questions of law. *Blackwell*, 459 F.3d at 752.

A defendant's right to present a complete defense is not unlimited, however, as "the Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Holmes*, 547 U.S. at 326-27 (internal quotation marks and citations omitted). Whether the exclusion of evidence violated a defendant's right to present a defense depends on whether that evidence, on the record as a whole, would create reasonable doubt concerning the defendant's guilt. *Blackwell*, 459 F.3d at 753.

Defendant sought to use the inmate complaint to impeach Officer Crum if he denied having racial bias or animus. The district court permitted defense counsel to inquire into racial bias, including whether Crum had used racially derogatory remarks in the past, but precluded reference to the unresolved prisoner complaint itself because it lacked sufficient indicia of reliability. Defendant argues on appeal that he should have been able to inquire into the allegation under Fed. R. Evid. 608(b) (specific instances of conduct of a witness may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness"). Even under Rule 608(b), however, the probative value of such evidence must not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. It is evident from the district court's reasoning that the evidentiary ruling was based on the lack of reliability and limited probative value of the allegation in the unresolved prisoner complaint. *See United States v. Wilson*, 303 F. App'x 350, 355 (7th Cir. 2008). Defendant has not shown that the district court abused its discretion in evaluating the reliability of such evidence or weighing its probative value against the potential for prejudice.

Nor has defendant shown that this impeachment evidence would create reasonable doubt concerning defendant's guilt. Crum testified on direct examination that he elected to intervene with force when he saw three black inmates beating one white inmate, explaining that a biracial fight in the presence of other inmates in the corridor presented a "chance for extreme volatility." Crum also mentioned race in explaining that, after he dove into the fight, the defendant was standing over him "swinging on [him] and the other white inmate."

Defense counsel questioned why Crum chose to intervene with force, and asked whether Crum had problems with African-Americans or had ever made racially derogatory remarks. Crum answered that he had no problems with any races and denied having ever made racially derogatory statements. Thus, the suggestion that race may have motivated Crum to jump into the fight was put before the jury, even without the impeachment defense counsel sought to use. The jury had the opportunity to assess the credibility of Crum and the defendant, and to view the recording of the incident in evaluating the defendant's claim of self-defense.

## C.     Sentencing

This court reviews challenges to the reasonableness of a defendant's sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Without challenging the substantive reasonableness of his within-Guidelines sentence, defendant argues that the district court's decision to impose a consecutive, rather than concurrent or partially concurrent sentence, was procedurally unreasonable.[1]

A district court has discretion to order a federal sentence to run either concurrently or consecutively to an undischarged term of imprisonment. 18 U.S.C. § 3584(b); *see United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009). The determination requires consideration of the relevant sentencing factors under 18 U.S.C. § 3553(a), as well as the advisory Guidelines and policy statements of the Sentencing Commission. 553 F.3d at 997; *see also* § 3584(b) ("The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of

---

[1]The government argues that defense counsel waived this claim by agreeing with the district court, but the record is clear that counsel was not conceding that a consecutive sentence was appropriate.

imprisonment is being imposed, the factors set forth in section 3553(a).")."A court does not abuse its discretion when it 'makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense.'" *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009) (citation omitted).

There was no dispute concerning the calculation of the applicable Guidelines range, which was determined to be 210 to 240 months of imprisonment. Defense counsel sought a downward variance, a sentence at the low end of the Guidelines range, and that the sentence be ordered to run concurrently with the two-and-a-half years remaining on his undischarged term of imprisonment. When defense counsel pointed out that the district court had statutory authority to impose a concurrent sentence, the judge interjected his reasons for denying that request. It is apparent from that explanation that the district court recognized its discretion, but declined to exercise it in this or any other case of a crime committed in prison. The judge explained his rationale, emphasized the need to ensure an incremental penalty for the instant offense, and considered the need to afford adequate deterrence and avoid unwarranted sentencing disparities under § 3553(a). Defendant has not demonstrated that his sentence was procedurally unreasonable.

**AFFIRMED.**